ROBERT M. FLEMING, Judge Pro Tem.
Plaintiff-appellant, Rogers Landry, instituted 'suit against defendants-appellees, Hunt-Wesson Foods, Inc., and its insurer, Employers Insurance of Wausau, praying for workman’s compensation benefits, penalties and attorney’s fees. Plaintiff has alleged total permanent disability as a result *313 of an injury allegedly sustained to his lower back while engaged in his employment. After trial on the merits the lower court rendered judgment in favor of plaintiff for 23 weeks of compensation at $49.00 per week subject to a credit for compensation already paid, which amounted to 13 week’s benefits, together with interest and costs. From this judgment Rogers Landry lodged the instant appeal. Defendants on the other hand seek no modification of the judgment.
The facts relative to the accident are essentially undisputed.
On April 28, 1970, the date of the accident, plaintiff was employed as an auto filler by Hunt-Wesson Foods, Inc. In connection with his job plaintiff was removing the contents from a boxcar with the use of a wooden and iron brace when apparently in so doing he lost his balance and fell into the boxcar. Plaintiff has not worked since the date of the accident.
The question involved in this litigation is therefore the extent of plaintiff's injury and whether or not his present disability is as a result of this accident. It is apparent from the record that Rogers Landry is totally incapacitated from employment at the present time. However, the lower court was of the opinion that this disability is not as a result of the on-job accident and we concur in this opinion.
The record reflects that immediately after his accident, plaintiff was treated in the emergency room of West Jefferson General Hospital by Dr. Jack L. Winters. Dr. Winters’ notes indicate that plaintiff complained of injury to “his neck and left shoulder . . . with pain radiating out towards his left shoulder and left arm.” Nowhere do Dr. Winters’ notes indicate a complaint relative to the lower back area.
On May 11th, Dr. Winters again saw plaintiff and noted “tenderness and restricted movement in the neck and shoulder.” In addition a swelling in the region of the thyroid gland was likewise noted as well as a lump under the right axilla and plaintiff was referred to West Jefferson General Hospital for the purpose of having tests run to determine if he were suffering from hyperthyroidism. However, no mention was made in Dr. Winters’ notes relative to lower back pain, discomfort, or disability.
On September 9, 1970 plaintiff was admitted to Veterans Administration Hospital in New Orleans where he remained an inpatient for 34 days, being discharged October 13th. Hospital records reveal that he was treated for hyperthyroidism. No mention is made of either lower back discomfort or of neck or shoulder problems. Upon discharge plaintiff was considered by the treating physician as being capable of returning to work.
On December 8, 1970 plaintiff was again admitted to Veterans Administration Hospital where he was operated on for removal of the mass under his left axilla. He was again treated for hyperthyroidism but nowhere do the records indicate a lower back problem. At that time, it was estimated plaintiff could return to work within approximately one week of his date of discharge which was December 21, 1970.
It was not until plaintiff was readmitted a third time to Veterans Administration Hospital on February 26, 1971, almost 10 months after his original accident, that any complaint of lower back problems was noted. Hospital records note a backache of “unknown etiology” and some tenderness in the lumbo sacral region but with good mobility of the back. It was further noted that plaintiff could bend and touch his toes with no trouble. At this time plaintiff was primarily treated for a toxic goiter, thyro-toxicosis and possible lymphoma and was discharged on March 15, 1971.
On July 15, 1971, more than one year after the initial accident, plaintiff began consulting Dr. Joseph P. Braud who noted “stiffness and spasm of the mid and lower back muscles with limitation of motion.” Dr. Braud was of the opinion that plaintiff had developed lower back syndrome and *314 placed him on muscle relaxants and began diathermy treatments of which plaintiff had approximately 60 from July 15 through November 11. Dr. Braud was of the opinion that plaintiff’s back injury coupled with his thyroid problem and a cardiac enlargement brought about as a result of the thyroid problem incapacitated plaintiff from any type of gainful employment.
The only other physician to examine plaintiff was Dr. Richard W. Levy who did so on November 1, 1971 at the request of defendants after suit had been filed. As regards plaintiff’s alleged lower back injury Dr. Levy had the following opinion:
“ . . . The neurological examination at the present time reveals no objective mechanical low back signs, and no evidence of spinal cord or nerve root injury or disease in either lower extremity. The apparent inability to bend from the waist more than 30° while standing is not supported by the remainder of the examination, to wit the fact that he can sit on the examining table with his legs extended and that the straight leg raising test is unlimited.”
It is obvious from a reading of the record, all medical experts being in agreement, that the accident of April, 1970 did not cause plaintiff’s thyroid problems, heart condition or the mass removed from beneath the right axilla. Regardless of whether or not plaintiff’s back difficulties are a contributing cause of his inability to work, these back problems were not proved to be the result of the initial accident. There is no record of either complaint nor objective evidence of back injury until some 10 months after the accident. Considering the fact that plaintiff was treated actively by Dr. Winters as well as various other physicians in the Veterans Administration Hospital during the interim period, none of whom noted back problems, we find it very unlikely that the on-job accident caused these injuries.
It is well established in the jurisprudence that the trial court has great discretion in weighing the testimony of the various witnesses and arriving at factual determinations. General Finance Corp. of New Orleans v. Yglesias, La.App., 230 So.2d 468 (1969); Jones v. Lungaro, La.App., 231 So.2d 60 (1970). We are of the opinion that it is essentially a question of fact as to whether the on-job accident caused plaintiff’s present disability. We conclude, as did the lower court, that as of October 13, 1970, the date plaintiff was discharged from the Veterans Administration Hospital as being capable of returning to work, liability for compensation payments on the part of the defendants ceased. Suffice it to say that plaintiff has not borne the burden of showing causation between his present back problems and the accident of April, 1970.
We accordingly find that, under the facts of this case, there exists no such arbitrary or capricious action on the part of defendants as would subject them to liability for penalties and attorney’s fees.
For the foregoing reasons the judgment of the lower court is affirmed. Costs of this proceeding are to be borne by plaintiff-appellant.
Affirmed.